O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| PILOT INC., a California corporation, | Case № 2:20-cv-02978-ODW (RAOx) |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO COMPEL ARBITRATION [36] AND DENYING MOTION FOR PRELIMINARY INJUNCTION [26]** |
| TYC BROTHER INDUSTRIAL CO., LTD. a Chinese corporation; GENERA CORPORATION, a California corporation; DAVID TANG, an individual; NGUYETT NGUYEN, an individual; ANDREA LIRA, an individual; and BEATRIZ ATKINSON, an individual, | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Pilot Inc. is a distributor of aftermarket automotive parts.  Pilot was Defendants Genera Corporation and TYC Brother Industrial Co. LTD's exclusive distributor in the United States for six specific retail customers.  When Genera and TYC terminated the agreement with Pilot and began servicing the six retail customers directly, Pilot initiated this suit for misappropriation of trade secrets and other claims.  Pilot moves for a mandatory preliminary injunction to prevent Defendants from using the misappropriated trade secrets to steal Pilot's exclusive business.  (Mot. Prelim. Inj.

("Mot. PI"), ECF No. 26.) TYC, Genera, David Tang, Nguyett Nguyen, Andrea Lira, and Beatriz Atkinson (collectively, "Defendants") move to compel arbitration based on an arbitration clause in the parties' distribution agreement. (Mot. to Compel ("Mot. Compel"), ECF No. 36.) The Court heard argument on the motions on June 22, 2020.

For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Compel Arbitration of all claims (ECF No. 36) and **DENIES** Pilot's Motion for Preliminary Injunction (ECF No. 26). The Court therefore **DISMISSES** the action.

## II. BACKGROUND

Pilot is a distributor and supplier of aftermarket automotive replacement parts and accessories in the United States. (Compl. ¶ 19, ECF No. 1.) TYC is a Chinese conglomerate that manufactures, among other things, automotive replacement and aftermarket parts and accessories. (Compl. ¶¶ 6, 20.) Genera is a wholly-owned subsidiary of TYC and is TYC's general agent in the United States. (Compl. ¶ 20.) Genera/TYC are considered the same for this action. (Compl. ¶ 20.)

Pilot has been a distributor for Genera/TYC in the United States for certain national retail customers since 2004. (Compl. ¶ 21.) In 2017, Pilot and Genera/TYC entered into a written distribution agreement (the "2017 Distribution Agreement") providing that Pilot would be Genera/TYC's exclusive distributor to six specific retailers ("Retail Customers") for three years, from the Effective Date of March 28, 2017, through February 29, 2020. (Compl. ¶ 26, Ex. C ("2017 Distribution Agreement") § 1, ECF No. 1-3.) The exclusivity of the agreement was conditioned on Pilot meeting certain criteria during the term, including satisfying certain sales numbers, retaining a minimum of 80% of the Retail Customers from term to term, and not distributing products that directly compete with Genera/TYC's products. (2017 Distribution Agreement § 1.) Pilot and Genera/TYC also executed a Mutual Confidentiality and Non-Disclosure Agreement ("NDA") around the same time and incorporated its terms into the parties' agreements. (Compl. ¶ 29, Ex. E, ECF No. 1-5.)

The 2017 Distribution Agreement includes an arbitration clause which states:

> Any dispute arising out of or in connection with this Agreement, including regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration administered by the Singapore International Arbitration Centre ("SIAC") in accordance with the SIAC Rules then in force, which rules are deemed to be incorporated by reference in this Agreement. The seat of the arbitration shall be Los Angeles, California, USA.

(2017 Distribution Agreement § 10.)

On July 19, 2019, Pilot and Genera/TYC executed a second agreement, to appoint Pilot as Genera/TYC's exclusive distributor for an additional three-year term, from March 1, 2020, through February 28, 2023 (the "2020 Agreement"). (Compl. ¶ 26, Ex. D ("2020 Agreement") §§ 1–2, ECF No. 1-4.) Pilot asserts the 2020 Agreement was to take effect on March 1, 2020. (Compl. ¶ 34.) The exclusivity of the 2020 Agreement was again conditioned on specified criteria. (2020 Agreement § 2.) Additionally, the 2020 Agreement states that it "constitutes the entire agreement among the parties, and supersedes all other agreements whether written and/or oral." (2020 Agreement § 8.) The 2020 Agreement does not include an arbitration clause.

On January 10, 2020, Genera/TYC terminated Pilot as its exclusive distributor. (Compl. ¶¶ 33–34.) Genera/TYC cited failure to meet the 2020 Agreement's criteria as the reason. (Compl. ¶ 34.) Genera/TYC also contends Pilot had been breaching the 2017 Distribution Agreement throughout 2018 and 2019. (Mot. Compel 5.)

Defendants David Tang, Nguyett Nguyen, Andrea Lira, and Beatriz Atkinson ("Individual Defendants") are former Pilot employees that resigned from Pilot in September 2019 (Atkinson) and February 2020 (Tang, Nguyen, and Lira) and began working for Genera. (Compl. ¶ 38.) Pilot contends that Genera/TYC poached the Individual Defendants and solicited them to steal Pilot's trade secrets and confidential information in an effort to take over Pilot's exclusive business with the Retail Customers. (Compl. ¶ 37.)

Accordingly, on March 30, 2020, Pilot initiated this action against Defendants asserting the following eleven causes of action:

(1) Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*, against all Defendants;
(2) Violation of the California Uniform Trade Secrets Act, California Civil Code section 3426 *et seq.*, against all Defendants;
(3) Breach of the 2020 Agreement, against Genera/TYC;
(4) Breach of the Implied Covenant of Good Faith and Fair Dealing, against Genera/TYC;
(5) Intentional Interference with Prospective Economic Relations, against Genera/TYC;
(6) Intentional Interference with Contractual Relations, against Genera/TYC;
(7) Breach of Employee Agreements, against Individual Defendants;
(8) Breach of Fiduciary Duty, against Tang;
(9) Aiding and Abetting Breach of Fiduciary Duty, against Genera/TYC;
(10) Civil Conspiracy, against all Defendants;
(11) Violation of California Business and Professions Code section 17200 *et seq.*, against all Defendants.

(Compl. ¶¶ 42–125.) On May 7, 2020, Pilot moved for a mandatory preliminary injunction. (*See* Mot PI.) On May 18, 2020, Defendants moved to compel arbitration. (*See* Mot. Compel.) Both motions are fully briefed and the Court heard argument on June 22, 2020.

### III. DISCUSSION

The Court first addresses Defendants' Motion to Compel Arbitration before turning to Pilot's Motion for Preliminary Injunction.

**A. Motion to Compel Arbitration [36]**

The Federal Arbitration Act ("FAA") governs contract disputes relating to arbitration where they affect interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–77 (1995). The FAA establishes "a liberal federal policy favoring arbitration agreements" and requires district courts to compel arbitration on all claims within the scope of the agreement. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

460 U.S. 1, 24 (1983)); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The federal policy favoring arbitration "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

In deciding whether to compel arbitration, a court's inquiry is generally limited to "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Techs.*, 475 U.S. at 649.

Turning to the first question, Defendants contend the 2017 Distribution Agreement's arbitration clause requires arbitration of all Pilot's claims in this action and the 2020 Agreement merely *extended* the 2017 Distribution Agreement's appointment term under modified conditions. (Mot. Compel 5–6, 14–18.) Pilot does not dispute that the 2017 Distribution Agreement contains a valid arbitration clause enforceable by all of the Defendants, or that the FAA applies to it. (Opp'n to Mot. Compel ("Opp'n Compel") 4, ECF No. 38; Reply Mot. Compel ("Reply Compel") 2, ECF No. 41.) Rather, Pilot argues the 2020 Agreement *superseded* the 2017 Distribution Agreement and does not incorporate the arbitration clause, meaning there is no agreement to arbitrate between the parties. (Opp'n Compel 3–4.)

Much of the parties' argument is smoke and mirrors. The simple fact is that Genera/TYC terminated the exclusive distributorship on January 10, 2020, before the

2020 Agreement was to take effect on March 1, 2020. Pilot affirmed in briefing and again at oral argument that the 2020 Agreement was not to take effect until March 1, 2020. Thus, because the 2020 Agreement never became effective, it could not have superseded the 2017 Distribution Agreement or its arbitration clause. That means the 2017 Distribution Agreement was the operative agreement when this dispute arose. The parties do not dispute that the 2017 Distribution Agreement's arbitration clause is valid and enforceable by all Defendants. Accordingly, the answer to the first question, whether there is an agreement to arbitrate between the parties, is affirmative.

Turning to the second question, whether the agreement covers the dispute is typically a question for the Court, unless the parties clearly and unmistakably delegate that question to the arbitrator. *AT&T Techs.*, 475 U.S. at 649; *Brennan*, 796 F.3d at 1130 ("[T]hese gateway issues can be expressly delegated to the arbitrator where the parties *clearly and unmistakably* provide otherwise." (internal quotation marks omitted)). The parties spill much ink regarding whether the 2017 Distribution Agreement's arbitration clause covers the present dispute. However, it is ultimately of no moment because, as Defendants correctly assert, the parties clearly and unmistakably delegate questions of arbitrability to the arbitrator. (Mot. Compel 20.)

The Ninth Circuit has found express incorporation of an arbitral body's rules may delegate arbitrability to the arbitrator. *Brennan*, 796 F.3d at 1130. In *Brennan*, the parties incorporated the AAA arbitration rules, which included a rule providing that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." *Id.* (alteration in original). The Ninth Circuit held this language constituted "clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Id.*

The parties here expressly incorporate the SIAC Rules into the 2017 Distribution Agreement. (Mot. Compel 20; *see* 2017 Distribution Agreement § 10.) In language nearly identical to the AAA rule in *Brennan*, SIAC Rule 28.2 states: "The Tribunal shall have the power to rule on its own jurisdiction, including any objections

6

with respect to the existence, validity or scope of the arbitration agreement." (Defs.' Req. for Judicial Notice ("RJN") Ex. G ("SIAC Rules"), ECF No. 36-4.)[1] Thus, as in *Brennan*, the parties' incorporation of the SIAC Rules into the 2017 Distribution Agreement clearly and unmistakably delegates arbitrability to the arbitrator. Accordingly, the second question is for the arbitrator.

A valid and enforceable agreement to arbitrate exists between the parties and they delegated questions of arbitrability to the arbitrator. Accordingly, the Court must enforce the arbitration agreement in accordance with its terms and compel arbitration. The Court therefore **GRANTS** Defendants' motion and compels arbitration of all Pilot's claims.

**B.      Motion for Preliminary Injunction [26]**

Turning to Pilot's Motion for Preliminary Injunction, Pilot seeks a mandatory preliminary injunction ordering extensive relief. (*See* Mot. PI.) The injunction Pilot seeks spans five pages and incorporates numerous pages of additional information from two declarations. (*See* Proposed Order on Mot. PI, ECF No. 26-5.) In brief, Pilot seeks an order that Defendants and any entity acting in concert with Defendants (i) return to Pilot its confidential information; (ii) certify that they have returned it all and identify any third parties with whom Defendants shared information; (iii) turn over to Pilot all data and every email and business account, computer, server, and other IT equipment in use at Genera/TYC and by the Individual Defendants, for an independent digital forensic expert to examine, identify, and remove Pilot's confidential information; (iv) be enjoined from using Pilot's confidential information and from doing business with the six Retail Customers with the use of Pilot's confidential information; (v) enjoining Individual Defendants from violating the confidentiality provisions of alleged employee agreements; and (vi) serve copies of

---

[1] The Court **GRANTS** Defendants' RJN as SIAC Rules are properly subject to judicial notice. *See Golden Temple of Or., LLC v. Puri*, 774 F. App'x 1044, 1045 n.2 (9th Cir. 2019).

the injunction order on the Retail Customers and other third parties. (*See* Proposed Order on Mot. PI.)

As a preliminary issue, Defendants contend the Court may not grant the injunctive relief Pilot seeks once it compels arbitration because the SIAC is authorized to grant equivalent relief. (Mot. Compel 18 (citing *Simula Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999)).) Defendants are mistaken.

It is true that the Ninth Circuit stated in *Simula* that "it would [be] inappropriate for the district court to grant preliminary injunctive relief" where all claims were subject to arbitration and the arbitral tribunal was authorized to grant equivalent relief. *Simula*, 175 F. 3d at 726. However, the Ninth Circuit subsequently clarified that a court has the *authority* to grant interim injunctive relief on arbitrable claims, even where it has compelled arbitration, "if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process." *Toyo Tire Holdings of Am. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981, 982 (9th Cir. 2010) (holding that the district court erred by finding as a matter of law that it lacked the power to grant injunctive relief). Nothing in *Simula* prevents a court from granting an interim injunction to preserve the status quo until the arbitral panel can consider a similar application. *Id.* at 981 (finding this holding consistent with *Simula*). Further, the parties here expressly agreed to allow either party to seek judicial interim injunctive relief "to preserve the status quo during the arbitration process." (2017 Distribution Agreement § 11.) And SIAC Rule 30.3, incorporated by reference, provides that such a request "is not incompatible with these Rules." (SIAC Rule 30.3.) Thus, the Court may consider Pilot's request to the extent interim relief will "preserve the status quo." *Toyo Tire*, 609 F.3d at 981; (2017 Distribution Agreement § 11.)

However, Pilot's requested injunction is extensive and goes far beyond merely preserving the status quo. Although a prohibitory injunction may preserve the status quo by ordering a party to refrain from certain acts, a mandatory injunction reaches beyond the status quo and orders a party to act. *See Hernandez v. Sessions*, 872 F.3d

976, 998–99 (9th Cir. 2017); *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (noting that mandatory injunctions are "particularly disfavored").

Pilot seeks a mandatory injunction ordering Defendants to act, including, for example, that Genera/TYC and Individual Defendants give to Pilot all data, every email and business account, and every computer, server, and other IT equipment. (*See* Proposed Order on Mot. PI.) Far from preserving the status quo, the requested injunction would instead radically alter the parties' relationship by giving Pilot access to all of Genera/TYC and Individual Defendants' data, accounts, and equipment. Pilot's injunction would cripple Genera/TYC's operations. It would also require extensive Court oversight. The scope of Pilot's requested injunction is extreme, invasive, and overbroad, and not designed to "preserve the status quo."

As Pilot's requested injunction goes well beyond preserving the status quo, the Court **DENIES** Pilot's Motion for Preliminary Injunction.

## C. Stay or Dismiss

Defendants contend that, once the Court compels arbitration of Pilot's claims, it should dismiss this action with prejudice. (Mot. Compel 25.) Pilot argues the Court should instead stay the litigation. (Opp'n Compel 12.)

In the Ninth Circuit, the district court has discretion to dismiss a party's complaint where the court finds all claims subject to arbitration. *See, e.g.*, *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (affirming dismissal of action without prejudice where "all of the claims raised in the action are subject to arbitration"). As the Court compels all Pilot's claims to arbitration and denies Pilot's request for interim injunctive relief, the Court, in its discretion, **DISMISSES** this action without prejudice.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Defendants' Motion to Compel Arbitration (ECF No. 36) and **DENIES** Pilot's Motion for Preliminary Injunction (ECF No. 26). The Court **DISMISSES** this action without prejudice.

**IT IS SO ORDERED.**

July 8, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**