
**O**

United States District Court
Central District of California

| | |
|---|---|
| PILOT INC., a California corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>TYC BROTHER INDUSTRIAL CO., LTD. a Chinese corporation, et. al,<br><br>          Defendants. | Case No. 2:20-cv-02978-ODW (RAOx)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS [47]** |

## I.     INTRODUCTION

Defendants Genera Corporation, T.Y.C. Brother Industrial Co., Ltd., David Tang, Nguyett Nguyen, Andrea Lira, and Beatriz Atkinson ("Defendants"), move for sanctions against Plaintiff Pilot, Inc. ("Pilot") and its counsel, Lewis Brisbois Bisgaard & Smith LLP. (Mot. for Sanctions ("Motion" or "Mot."), ECF No. 47.) For the reasons discussed below, the Court **DENIES** Defendants' Motion.[1]

## II.     BACKGROUND

Pilot is a distributor and supplier of aftermarket automotive replacement parts and accessories in the United States. (Compl. ¶ 19, ECF No. 1.) TYC is a Chinese

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

conglomerate that manufactures, among other things, automotive replacement and aftermarket parts and accessories. (*Id.* ¶¶ 6, 20.) Genera is a wholly-owned subsidiary of TYC and is TYC's general agent in the United States. (*Id.* ¶ 20.) Genera/TYC are considered the same party for purposes of this litigation. (*Id.*)

Pilot has been a distributor for Genera/TYC in the United States for certain national retail customers since 2004. (*Id.* ¶ 21.) In 2017, Pilot and Genera/TYC entered into a written distribution agreement (the "2017 Distribution Agreement") providing that Pilot would be Genera/TYC's exclusive distributor to six specific retailers for three years. (*Id.* ¶ 26, Ex. C ("2017 Distribution Agreement") § 1, ECF No. 1-3.) The 2017 Distribution Agreement includes an arbitration clause which states that "[a]ny dispute arising out of or in connection with" the 2017 Distribution Agreement shall be resolved in arbitration. (2017 Distribution Agreement § 10.)

On July 19, 2019, Pilot and Genera/TYC executed a second agreement, to appoint Pilot as Genera/TYC's exclusive distributor for an additional three-year term (the "2020 Agreement"). (Compl. ¶ 26, Ex. D ("2020 Agreement) §§ 1–2, ECF No. 1-4.) The 2020 Agreement states that it "constitutes the entire agreement among the parties, and supersedes all other agreements whether written and/or oral." (2020 Agreement § 8.) The 2020 Agreement does not include an arbitration clause.

On January 10, 2020, Genera/TYC terminated Pilot as its exclusive distributor. (Compl. ¶¶ 33–34.) Pilot contends that Genera/TYC poached Pilot's former employees, Defendants David Tang, Nguyett Nguyen, Andrea Lira, and Beatriz Atkinson ("Individual Defendants"). (*Id.* ¶ 38.) Pilot claims that Genera/TYC also solicited the Individual Defendants to steal Pilot's trade secrets and confidential information in an effort to take over Pilot's exclusive business in the United States. (*Id.* ¶ 37.)

Accordingly, on March 30, 2020, Pilot filed a Complaint against Defendants asserting eleven causes of action. (*Id.* ¶¶ 42–125.) Pilot moved for a mandatory preliminary injunction and Defendants moved to compel arbitration. (Mot. Prelim.

Inj., ECF No. 26; Mot. Compel Arbitration, ECF No. 36.) The Court heard oral argument on both motions on June 22, 2020. On July 8, 2020, the Court granted Defendants' Motion to Compel Arbitration, denied Pilot's Motion for Preliminary Injunction, and dismissed the action without prejudice. (*See* Order Granting Mot. to Compel, ECF No. 46.)

On July 13, 2020, Defendants moved for sanctions against Pilot and its counsel, alleging that (1) Pilot's Complaint was frivolous, (2) Pilot advocated positions that lacked evidentiary support, and (3) Pilot's counsel improperly contacted a Genera officer and Individual Defendant Nguyett Nguyen ("Nguyen"). (*See generally* Mot.) Defendants request that the Court order Pilot and its counsel to pay $222,824 in attorneys' fees and costs as a sanction, pursuant to 28 U.S.C. § 1927, Federal Rule of Civil Procedure ("Rule") 11, and the Court's inherent authority. (Mot. 1, 8–10.) The Motion is fully briefed. (*See* Opp'n, ECF No. 48; Reply, ECF No. 49.) For the following reasons, Defendants' Motion is **DENIED**.

### III. LEGAL STANDARDS

#### A. 28 U.S.C. § 1927

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C § 1927. "Because the section authorizes sanctions only for the 'multipli[cation of] proceedings,' it applies only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). Moreover, "[a]n award of sanctions under 28 U.S.C. § 1927 . . . requires a finding of recklessness or bad faith." *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998).

#### B. Rule 11

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and . . . streamline the administration and procedure of the federal courts." *Cooter &*

*Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). The court may sanction an attorney under Rule 11 for filing a pleading or other paper that is "frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. Cnty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997); Fed. R. Civ. P. 11(b). Nonetheless, "[i]f, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time that the position is adopted, then sanctions should not be imposed." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986).

Imposing sanctions under Rule 11 "is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). As such, courts have "significant discretion" when determining whether to award sanctions. *See* Fed. R. Civ. P. 11(b), Advisory Committee Notes (1993 Amendment).

### C. The Court's Inherent Authority

District courts have the "inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). Sanctions pursuant to the Court's inherent authority "are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994. However, these sanctions are only available "if the court specifically finds bad faith or conduct tantamount to bad faith." *Id.* "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

## IV. DISCUSSION

Defendants contend that the Court should sanction Pilot pursuant to 28 U.S.C. § 1927, Rule 11, and the Court's inherent authority because: (1) Pilot initiated this lawsuit instead of agreeing to arbitrate its claims, ignoring controlling Ninth Circuit precedent; (2) Pilot advanced legal positions that lacked any evidentiary support; and

(3) Pilot's counsel improperly contacted a Genera officer without the consent of Genera's counsel, and requested the opportunity to discuss settlement with Individual Defendant Nguyen outside the presence of her counsel. (*See generally* Mot.) Defendants' arguments are meritless. The Court addresses each in turn.

### A. Pilot Did Not Ignore Ninth Circuit Precedent

Defendants assert that Pilot "deliberately ignored controlling precedent" by initiating this case instead of agreeing to arbitrate the dispute pursuant to the arbitration clause in the 2017 Distribution Agreement. (Mot. 10–12.) Defendants insist that Pilot should be sanctioned under Rule 11 for "pretending that potentially dispositive authority" did not exist. (Mot. 10–12.) Specifically, Defendants contend that Pilot "refused to recognize" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) ("*Simula*"). (*Id.* at 11.) Pilot argues that it *did not* ignore *Simula*. (Opp'n 9.) In fact, Pilot points to its Opposition to Defendants' Motion to Compel Arbitration, where Pilot directly quotes *Simula*, and distinguishes that case from the issues presented in their lawsuit. (*Id.* at 9–10.)

Defendants' argument is meritless. A cursory review of Pilot's Opposition to Defendants' Motion to Compel Arbitration clearly demonstrates that Pilot addressed *Simula*, and did not, as Defendants claim, "ignore[] controlling precedent." (Mot. 10; *see* Opp'n 9; *see also* Pilot's Opp'n to Defs.' Mot. to Compel Arbitration ("Opp'n Mot. Compel") 5, ECF No. 38 (arguing the facts in this case are distinguishable from those in *Simula*).)

The Court finds that Pilot did not ignore controlling Ninth Circuit precedent. Assuming without finding that *Simula* is controlling precedent, Pilot addressed *Simula*, attempted to distinguish this case from the holdings there, and thus, in its view, had a reasonable basis in fact and law to file its Complaint and oppose Defendants' Motion to Compel Arbitration. Pilot's refusal to view *Simula* from the same perspective as Defendants does not mean that Pilot "*ignored*" or "*refused to recognize*" controlling precedent, as Defendants claim. (*See* Mot. 10–11 (emphasis

added).) Pilot simply does not agree with Defendants' position. A mere disagreement regarding the law and its applicability to this case does warrant sanctions. *See e.g.*, *Golden Eagle*, 801 F.2d at 1538 ("[i]f, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time that the position is adopted, then sanctions should not be imposed.").

### B.     Pilot Did Not Advocate Positions That Lacked Evidentiary Support

Defendants claim that the Court should sanction Pilot for "plead[ing] and advocat[ing] bad-faith positions lacking evidentiary support." (Mot. 13.)

First, Defendants contend that Pilot "ha[s] argued that because the [2020 Agreement] included an integration clause, the arbitration agreement in the 2017 Distribution Agreement was of no further effect." (Mot. 13.) Defendants' contention is baseless. Pilot asserts that "it made no such argument" and highlights Defendants fail to cite to anything in the record that demonstrates Pilot advocated that position. (Opp'n 10.) Pilot actually agreed that the arbitration provision of the 2017 Distribution Agreement continued to apply to claims arising out of *that agreement*. (*Id.*) Pilot explains that it "asserted that the '2017 arbitration provision does not encompass the dispute at issue' because 'none of Pilot's 11 causes of action arise out of or in connection with the 2017 Distribution Agreement." (*Id.* (brackets omitted) (quoting Opp'n Mot. Compel 4).) The Court agrees with Pilot, Defendants fail to cite to *anything* that demonstrates Pilot advocated the position that the arbitration agreement was of no effect. (*See generally* Mot.) And Defendants completely fail to address this omission in their Reply; thus, the Court interprets Defendants' failure to identify where or when Pilot made this "bad-faith" position as Defendants abandoning this frivolous argument.

Second, Defendants contend that Pilot, in bad faith, advanced the argument that its claims were not subject to arbitration because the 2020 Agreement, which did not contain an arbitration clause, superseded the 2017 Distribution Agreement; and Pilot's claims arose out of the 2020 Agreement. (Mot. 13.) Defendants' position, however,

1    strains credulity. Defendants' own counsel stated, prior to Pilot filing this lawsuit,
2    that "*[t]he [2020 Agreement] . . . constitutes the entire agreement among [sic] the*
3    *parties, and supersedes all other agreements whether written or oral*. . . . [The 2017
4    Distribution Agreement] was expressly superseded by a later-executed written
5    contract." (Opp'n 11 (emphasis added) (internal quotation marks omitted) (quoting
6    Decl. of Anthony Capobianco ("Capobianco Decl."), Ex. A, ECF No. 47-4).)

7    It is apparent that Defendants have since changed their position regarding which
8    agreement governs Pilot's claims. However, Defendants cannot, in good faith, assert
9    that Pilot's argument that the arbitration agreement did not extend to the
10   2020 Agreement was *frivolous*, when Defendants' own counsel appeared to have
11   agreed with Pilot before this litigation. (*See id.*)

12   Pressing on, Defendants argue Pilot's former CEO, Scott Webb ("Webb"),
13   acknowledged the 2020 Agreement was an "extension" (therefore not a superseding
14   agreement), meaning the arbitration clause extended to the 2020 Agreement.
15   (Mot. 13.) Defendants contend that, by acknowledging the 2020 Agreement was an
16   extension, Pilot must have known its claims had no merit and asserted them in bad
17   faith. The one-sentence email from Webb states: "I'm traveling but will be back in
18   the office Thursday—I look forward to executing the extension then." (Mot. 13
19   (quoting Decl. of Jackson Kwok ¶ 6, Ex. A, ECF No. 47-2).) The email is not
20   indicative of much, if anything, and it is definitely not sufficient to demonstrate Pilot
21   acted in bad faith by asserting the 2020 Agreement superseded the 2017 Distribution
22   Agreement. In addition to Defendants' counsel's email, the plain language of the
23   2020 Agreement states that it "supersed[es]" the 2017 Distribution Agreement. Thus,
24   Pilot's argument that its claims were not subject to arbitration because the 2020
25   Agreement superseded the 2017 Distribution Agreement was reasonably based on the
26   language of the agreement, and is not, as Defendants allege, frivolous. *See, e.g.*,
27   *Woodrum v. Woodward Cnty, Okl.*, 886 F.2d 1121, 1127 (9th Cir. 1989) ("The key
28   question in assessing frivolousness is whether a [pleading] states an arguable claim—

not whether the pleader is correct in his perception of the law."); *see also Frivolous*, Black's Law Dictionary (11th ed. 2019) ("Lacking a legal basis or legal merit . . . .").

Third and finally, Defendants contend Pilot's argument that the arbitration clause did not apply to its claims was frivolous because Pilot ignored "well settled jurisprudence" that an arbitration agreement survives even where the prior agreement is rescinded by a later agreement. (Mot. 13–14 (emphasis omitted) (quoting *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1410 (9th Cir. 1989)).) Pilot asserts that it "[did] not dispute that the arbitration agreement survives, [or] that it continues to govern disputes that arise out of or relate to the 2017 Agreement, even after the termination/expiration of the 2017 Agreement." (Opp'n 11.) Pilot emphasizes that its position is, and has always been, that "none of its currently-asserted claims arise out of or relate to the 2017 Agreement." (*Id.*)

As Pilot correctly notes, "[a]n arbitration clause does not govern a dispute based on a subsequent agreement or contract that has no connection to the prior agreement requiring arbitration." (Opp'n 10 (quoting *Homestake Lead Co. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1142 (N.D. Cal. 2003).) Here, Pilot explains that, in its view, the causes of action it asserts in the Complaint are not connected to the 2017 Distribution Agreement, and thus, that agreement's arbitration clause does not apply to this case. (*Id.* at 10–11.) Pilot's position, then, is not *frivolous*. Pilot simply disagrees with Defendants' contention that the claims in this case arise out of or relate to the 2017 Distribution Agreement. As previously noted, a mere disagreement regarding the law and its applicability to this case does warrant sanctions. *See e.g.*, *Golden Eagle*, 801 F.2d at 1538. Accordingly, Defendants' arguments fail.

**C.  Pilot Did Not Violate the Rules of Professional Conduct**

Defendants contend that the Court should sanction Pilot for (1) communicating directly or indirectly with a person represented by counsel, and (2) witness tampering, in violation of California Rule of Professional Conduct 4.2 ("Rule 4.2"). (*See* Mot. 14–15.) Rule 4.2 provides "a lawyer shall not *communicate* directly or indirectly

*about the subject of the representation* with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer." Cal. R. Prof'l Conduct 4.2 (emphasis added).

First, Defendants claim that, on March 27, 2020, Pilot's attorney, Ryan Alexander ("Alexander"), directly contacted a Genera officer, David Tang ("Tang"), without the consent of Genera's counsel. (Mot. 14–15.) Pilot counters, arguing that prior to filing this lawsuit, Alexander called Genera's main telephone number and asked to speak with Tang, solely to determine if he worked for the company. (Opp'n 13–14 (citing Decl. of Ryan Alexander ("Alexander Decl.") ¶ 1, ECF No. 48-1.) Pilot stresses that "Alexander never communicated with Mr. Tang." (*Id.* at 13 (citing Alexander Decl. ¶ 1).)

The only evidence that Defendants put forth to support their claim that Alexander violated Rule 4.2 by improperly communicating with Tang is an email from Tang's colleague, Nelson Sheih. (*See* Mot. 14 (citing Decl. of David Tang ("Tang Decl.") ¶ 3, Ex. A, ECF No. 47-3).) The email is addressed to Tang and states: "Got a call from Ryan Alexander looking for you. Please call him . . . ." (Tang Decl. ¶ 3, Ex. A.) This email is not evidence that Alexander *communicated directly* with Tang about *the subject of the representation*, *see* Rule 4.2, as Defendants claim, (*see* Mot. 14. (insisting "Alexander . . . directly contacted David Tang")). And the email certainly does not demonstrate Alexander engaged in any indirect communication with Tang about the subject of the representation. Defendants' position strains reality and is way off-base. Defendants are manipulating the facts and stretching the evidence, claiming Alexander violated Rule 4.2 by calling Genera's main telephone number; however, the evidence before the Court clearly demonstrates that Alexander did not communicate with Tang in violation of Rule 4.2.

Second, Defendants claim that Alexander also violated Rule 4.2 by requesting to speak directly with Individual Defendant Nguyen "to discuss terms of settlement" outside the presence of her counsel. (Mot. 15.) Defendants point to a May 22, 2020

email from Alexander *to Defendants' counsel*, Anthony Capobianco ("Capobianco") in which Alexander states: "My client has received a notice that [Nguyen] may no longer be employed by the company. If this be the case, we would like to sit down with [Nguyen] individually to discuss terms of settlement." (Capobianco Decl., Ex. C, ECF No. 47-4).) Capobianco, interpreting Alexander's request as a violation of Rule 4.2, replied: "You may not contact our client directly and speak to her outside our presence, if that is what you are suggesting . . . ." (*Id.*) Four minutes later, Alexander responded to Capobianco to dispel any confusion caused by his initial email and stated: "To clarify, we (my client and me) would like to sit down with [Nguyen] *individually (without participation of the other defendants)*. Please convey this offer to her in the interest of discussing a settlement *with the participation of the counsel of her choice*." (*Id.* (emphases added).)

Based on a plain reading of that chain of communication, Defendants' claim that Alexander attempted to speak with Nguyen outside the presence of her counsel is ridiculous. However, Defendants *insist* that "Alexander . . . attempt[ed] to communicate directly with [Nguyen]" in violation of Rule 4.2. (Mot. 15.) Defendants are clearly wrong, and their persistence in pressing this non-issue is troubling. The Court finds that nothing in the record suggests that Alexander attempted to communicate with Nguyen or speak with Nguyen outside the presence of her counsel.

In sum, the Court finds nothing to suggest that Pilot engaged in any conduct worthy of sanctions. In fact, most of Defendants' arguments are frivolous and clear misrepresentations of the facts. In light of the many unsupported and obviously false assertions in the Motion, Defendants' Motion appears to have been filed in bad faith. *See C.Q. v. River Springs Charter Schs.*, No. CV 18-01017 SJO (SHKx), 2019 WL 6331402, at *13 (C.D. Cal. Oct. 21, 2019) ("Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument . . . ." (quoting *Estate of Blas Through Chargualaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986)). Here,

Defendants' embellished claims that Pilot's counsel engaged in improper conduct were easily debunked by reviewing the record before the Court.

Based on the foregoing, the Court finds that Pilot did not violate Rule 11 or Rule 4.2. Defendants' Motion is **DENIED**.

**D.    Defendants' Motion Is Frivolous**

Somewhat ironically, after reviewing the papers Defendants filed in connection with this Motion to sanction Pilot, the Court finds it necessary to remind Defendants' counsel of *their* ethical obligations—which require counsel to avoid filing motions that are frivolous, or are brought only to harass the opposing side. *See* Rule 11 ("By presenting to the court a . . . written motion . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, . . . it is not being presented for any improper purpose, such as to harass."); *Estate of Blue*, 120 F.3d at 985 (explaining that the Court may sanction an attorney under Rule 11 for filing a pleading or other paper that is "frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose."); *see also* Cal. Rule of Prof'l Conduct 3.3 ("A lawyer shall not . . . knowingly make a false statement of fact or law to a tribunal.").

Several arguments that Defendants' counsel put forth in this Motion are utter nonsense. Defendants' counsel make blatantly false statements and flagrantly misrepresent the facts. (*See, e.g.*, Mot. 15 (insisting that Alexander attempted to communicate directly with Nguyen in violation of Rule 4.2, when the evidence clearly demonstrates he did not).) Because several of Defendants' arguments lack any support, or are easily debunked, the Court can only infer that this Motion was filed in bad faith and with the intent to harass Pilot and its counsel. It is evident that there is animosity between Defendants and Pilot. Nevertheless, Defendants may not drag the Court into its foolish and spiteful antics by filing a frivolous motion for sanctions, thereby wasting valuable judicial resources.

///

///

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion for Sanctions. (ECF No. 47.)

**IT IS SO ORDERED.**

January 14, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**